UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BRIAN MASCK,

Plaintiff,

vs.

Case No. 13-10226
HON. GERSHWIN A. DRAIN

SPORTS ILLUSTRATED, *et al.*,

Defendants.
_______________________________/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [#107]**

## I. INTRODUCTION

On January 18, 2013, Plaintiff, Brian Masck ("Masck"), filed the instant action alleging copyright infringement. Presently before the Court is Defendants,' Getty Images, Inc. ("Getty"), Sports Illustrated ("SI"), Nissan North America ("Nissan"), Amazon.com ("Amazon"), Walmart Stores, Inc., ("Walmart"), Walmart.com USA, LLC ("Walmart.com"), Photo File, Inc. ("Photo File"), and Fathead LLC ("Fathead"), Motion for Summary Judgment [#107], filed on January 6, 2014. This matter is fully briefed and a hearing was held on February 24, 2014.

For the reasons that follow, the Court will grant in part and deny in part Defendants' Motion for Summary Judgment [#107].

## II. FACTUAL BACKGROUND

This suit is a copyright infringement action. The basis of the claims is an iconic photo

of Defendant Desmond Howard ("Howard") taken by Masck on November 23, 1991, at Michigan Stadium in Ann Arbor, Michigan. The photo was taken of Howard after running back a punt for a touchdown during a football game where the University of Michigan Wolverines soundly defeated archrival the Ohio State Buckeyes. Before crossing the endzone, Howard made what is now known as the "Heisman pose" by lifting his left leg up and stretching out his left arm. Masck alleges that he was the only photographer who got a "sharp" shot of this now iconic pose.

Masck made a copy of the photo and sent the original slide to SI for publication in a planned Heisman preview issue. Masck alleges he wrote "Photo © 1991 by Brian Masck" on the cardboard mount of the slide that was sent to SI. The photo was included in an article about Howard published in the December 1991 issue of SI. The photo correctly credited "Brian Masck" as the photographer. SI paid Masck for the use of the photograph but did not return the negative.

Around the time of the first publication of the photo, Masck claims he sought the counsel of the law firm Warner Norcross and Judd about correctly copyrighting the photograph, and was told that publication with the proper attribution was sufficient protection. Based on this advice, Masck did not register the photo with the Copyright Office until August 31, 2011. At some point between 1992 and 1998, the original slide ended up with Allsport, a sports photo agency Masck was a contributor for. However, Masck alleges he never gave Allsport the photo.[1]

In 1998 Getty acquired Allsport. Getty subsequently informed Masck of its take over

---

[1] Getty maintains that given the passage of time, all documents explaining when and how Allsport came into control of the photos has been lost.

of Allsport and returned approximately 2,500 photos, formerly in Allsport's control, to Masck that identified him as the photographer. Getty asked Masck to inform them as soon as possible if he believed Allsport had any more of his images so that Getty could properly return them to Masck. While Masck never responded, he claims the collection never should have included a copy of the Heisman photo, since it was never sold to Allsport. On May 2, 2005, Getty uploaded the Heisman photo to its digital asset management system without crediting Masck. From that time until September 2, 2011, Getty sold licenses of the photo to customers.

Over time, Masck observed several instances of infringing uses of his photograph. In June 2010, Masck discovered a reproduction of his photo for sale with Photo File's logo on it. SI published a full-page Nissan advertisement using the Howard photo on October 18, 2010, August 21, 2011, and January 9, 2012. Champions Press published a reproduction of the photo in a book about Howard titled, *I Wore 21: The Legend of Desmond Howard*. Additionally, Howard's website contained a reproduction of the photo, Fathead produced a life-size adhesive of the photo that was offered for sale, and several reproductions of the photograph were offered for sale on Amazon. On September 21, 2012, Masck requested Amazon stop selling unauthorized reproductions of the photo on their website, however Amazon continued to permit photo sales. Furthermore, Walmart continues to offer copies of the photo for sale in stores and online.

Masck brought this suit in an attempt to receive compensation for the allegedly unauthorized use of the photo by Defendants. Masck's lengthy Complaint raises twenty different claims against Defendants. The claims include copyright infringement under the Copyright Act, 17 U.S.C. § 502, *et seq.*, against SI, Nissan, Getty, Champions Press,

Howard, Photo File, Fathead, Amazon and Walmart (Counts I-IX); unfair competition under the Lanham Act, 11 U.S.C. § 1125, against SI, Nissan, Getty, Champions Press, Howard, Photo File, and Fathead (Counts X-XVI); unfair competition under the Michigan Consumer Protection Act, MICH. COMP. LAWS § 445.911, against SI, Nissan, Getty, Champions Press, Desmond Howard, Photo File, and Fathead (Count XVII); tortious interference against Champions Press (Count XVIII); unjust enrichment against all Defendants (Count XIX); and injunctive relief against all Defendants (Count XX).[2]

## III. LEGAL ANALYSIS

### A. Standard of Review

Federal Rule of Civil Procedure 56(a) permits a party to:

> [M]ove for summary judgment, identifying each claim or defense-or the part of each claim or defense-on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has affirmed the use of summary judgment and recognized it as an integral part of the fair and efficient administration of justice. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

The party seeking summary judgment "bears the initial burden of specifying the basis upon which it contends judgment should be granted and of identifying that portion of the record which, in its opinion, demonstrates the absence of a genuine issue of material

---

[2] On June 11, 2013, the Court granted in part and denied in part various motions filed by the Defendants. *See* Dkt. No. 69. The Court's June 11, 2013 order dismissed Counts XVIII, tortious interference; XVII, unfair competition under the Michigan Consumer Protection Act; XI, unjust enrichment; VIII, vicarious copyright infringement, as well as Masck's request for statutory damages and attorney fees against Howard.

fact." *Celotex*, 477 U.S. at 322. The evidence and all reasonable inferences must be construed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The burden then shifts to the non-moving party to produce "specific facts showing that there is a genuine issue for trial." *First Nat'l Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968). The evidence presented must be such on which a jury could reasonably find for the plaintiff; mere denials, unsupported allegations, or speculations will not be enough to meet this burden. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B. Lanham Act**

The Lanham Act makes "actionable the deceptive and misleading use of marks," and "protect[s] persons engaged in...commerce against unfair competition." 15 U.S.C. § 1127. This Act applies to a person who "in connection with any goods...uses in commerce...any false designation of origin...which...is likely to cause confusion...as to the origin...of his or her goods." 15 U.S.C. § 1125(a)(1)(A). The Supreme Court held that the "origin of goods" refers only to "tangible goods" and not "communicative products." *See Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 37 (2003). "[T]aking tangible goods and reselling them as your own constitutes a Lanham Act violation; taking the intellectual property contained in those goods and incorporating it into your own goods does not." *Nat'l Bus. Dev. Servs., Inc. v. Am. Credit Educ. & Consulting Inc.*, 299 F. App'x 509, 511 (6th Cir. 2008). "The federal Copyright Act does not preempt the federal Lanham Act, or vice-versa. In fact, it is common practice for copyright owners to sue for both infringement under the 1976 Copyright Act and unfair competition under the Lanham Act." *Kehoe Component Sales Inc. v. Best Lighting Products, Inc.*, No. 2:08-CV-00752, 2013 WL 1165028 (S.D.

Ohio Mar. 20, 2013) (quoting *Alameda Films SA de CV v. Authors Rights Restoration Corp. Inc.*,331 F.3d 472, 482 (5th Cir. 2003)). In its Order Granting in Part and Denying in Part Defendants' Motions to Dismiss, this Court stated that it was not ready "to conclude that Plaintiff's photo is an intangible item," under *Dastar*, however the Court indicated it "would consider future arguments" after the parties had an opportunity to conduct discovery. *See* Dkt. No. 69 pg. 6-7.

In their present motion, Defendants continue to argue that *Dastar* bars Masck's Lanham Act claim. Masck does not assert that any Defendant misled the public as to the origin of a tangible good; instead, he only argues that each failed to credit him with a copyrighted photo. Such a claim is directly barred by *Dastar*. In *Dastar*, a television producer brought a Lanham Act claim against a competitor based on the competitor's release of a video set made from tapes produced by the television producer. *Dastar*, 539 U.S. at 27-28. The *Dastar* court held that the Lanham Act refers "only to the manufacturer or producer of the physical 'good' that is made available to the public" not to the creator of the underlying work. *Id*. at 31, 37. Because the defendant in *Dastar* was the originator of the video set it sold, as it created the video set in dispute, the court found for the defendant and held that there was no Lanham Act claim, even though the plaintiff had created the underlying television series. *Id*. at 38. Defendants argue *Dastar* is analogous to the instant case, where Masck does not claim to have produced any tangible goods whose origin Defendants falsely designated. Moreover, many courts have applied *Dastar* to dismiss claims nearly identical to Masck's, where the plaintiff claimed defendant violated the Lanham Act by copying or distributing a photograph with inaccurate credit. *Agence France Presse v. Morel*, 769 F. Supp. 2d 295, 307 (S.D.N.Y. 2011).

In *Morel*, a photojournalist brought a claim against a news agency for copyright infringement. The plaintiff had used Twitter and Twitpic, a third-party application of Twitter, to upload photos he took of the aftermath of the January 12, 2010 earthquake in Haiti. There were no copyright images on the photos themselves, but "Morel" and "by photomorel" were listed next to the images. The images were copied by a third party, Lisandro Suero, and placed on his Twitpic. The defendant subsequently put Morel's photographs on an online photo database and transmitted them to Getty without recognizing Morel, but citing Suero as the photographer. Getty then licensed Morel's photos to numerous third-party news agencies. The *Morel* court held that the plaintiff did not have a Lanham Act claim against AFP and Getty "because photographs are 'communicative products' protected by copyright, false designation of their authorship is not cognizable under section 43(a)(1)(A) after Dastar." *Morel*, 769 F. Supp. 2d at 307; *see also Richard Feiner & Co. v. New York Times Co.*, No. 07-Civ.-11218, 2008 WL 2963550, *4 (S.D.N.Y. Aug. 1, 2008); *Auscape Int'l v. Nat'l Geographic Soc'y*, 409 F. Supp. 2d 235, 250-51 (S.D.N.Y. 2004) (claims of failure to "attribute properly the images...belong under the Copyright Act, not the Lanham Act.")

Masck presents no evidence to suggest that he produced a tangible good whose origin the Defendants falsely designated. Rather, the evidence of record demonstrates that Masck did not produce the Nissan advertisements, the stickers sold by Fathead, the prints sold by Photo File, or the stickers sold on Amazon. Under *Dastar*, even the Defendants "wholesale reliance" upon Masck's work without providing credit would not give rise to a Lanham Act violation. *See Feiner* (dismissing a Lanham Act claim regarding a picture published in the New York Times because the newspaper, not the Plaintiff, is the producer

of the tangible product offered for sale...”); *Morel,* 769 F. Supp. 2d AT 307 (“Because photographs are ‘communicative products’ protected by copyrights, false designation of their authorship is not cognizable under Section 43(a)(1)(A) after *Dastar*.”) The Court will grant Defendants’ Motion for Summary Judgment on this matter and dismisses Masck’s claims under the Lanham Act.

**C. Doctrine of Laches**

The doctrine of laches is the “negligent and unintentional failure to protect one’s rights.” *Herman Miller, Inc. v. Palazzetti Imports and Exports, Inc.*, 270 F.3d 298, 320 (6th Cir. 2001). “A party asserting laches must show: (1) lack of diligence by the party against whom the defense is asserted, and (2) prejudice to the party asserting it.” *Id*. Defendants argue that Masck delayed unreasonably in bringing his claims. A delay is measured from the time “at which the plaintiff knew *or should have known* that defendant’s infringement had ripened into a provable claim.” *Id*. at 231. (citing *Kellogg Co. v. Exxon Corp.,* 209 F.3d 562, 569-70 (6th Cir. 2000)). The law also recognizes that a reasonable copyright holder, in the interest of preventing infringement, stays aware of what is going on in his field. *Kepner-Tregoe, Inc. v. Exec. Dev., Inc.,* 79 F. Supp. 2d 474, 488 (D. N.J. 1999). “[A] trademark owner is chargeable with the information it might have received had due inquiry been made,” as the trademark owner has a “duty to police its rights against potential infringers.” *Saul Zaentz Co. v. Wozniak Travel, Inc.,* 627 F. Supp. 2d 1096, 1110 (N.D. Cal. 2008).

Defendants argue Masck should have been aware of a potential copyright violation when Getty publicly put the Howard photo up on its website in 2005. Masck was familiar

with Getty, as in 2002 Getty sent Masck a letter informing him they had publicly taken over Allsport and returning thousands of Masck's photos to him. Getty also paid Masck certain royalty checks. However, Masck claims he never visited their site or looked for the Howard photo. Consequently, Defendants maintain that Masck's decision not to check for the photograph and to subsequently bring claims against Getty eight years after the images were made available online is unreasonable delay.

Moreover, Defendants allege they are prejudiced by the delay. Since 1991, when the photo was taken and used, with permission, by SI, documents relevant to the photo showing how and why Allsport came to own the slide have been lost.[3] Consequently, Defendants lack access to documentation that they claim would easily clarify their rightful ownership of the photo. Getty took over Allsport and claims they had no notice that they were infringing on Masck's copyright. Additionally, Defendants argue that under the Copyright Act, an owner must register his copyright within 5 years of creation for the certification to be prima facie evidence of ownership, Masck however, waited 20 years. 17 U.S.C. § 410 (1976).

While Defendants argue Masck should have filed a copyright earlier, Masck maintains that in 1992, he acted under the advice of his lawyer not to. It was only after he began to see massive amounts of violations by Getty that Masck sought to register. In the meantime, Masck alleges that he appropriately notified all the violaters he knew about of his ownership. However, Masck maintains that the strong majority of Defendants' violations

---

[3] On a claim of laches "[e]vidientiary prejudice includes such things as lost, stale, or degraded evidence, or witnesses whose memories have faded, or who have died." *Evergreen Safety Council v. RSA Network Inc.*, 697 F.3d 1221, 1227 (9th Cir. 2012).

occurred in 2010 or later, and that between 1992 and 2005 there were no infringements that he knew about. Additionally, Masck counters Defendants statement of reliance and argues that there is no prejudice to the Defendants resulting from the delay.

Masck argues that laches, as an equitable defense, is not available where the infringement was willful, and that it requires factual determination. In the instant case, Masck provides reasonable explanations for why such delays may have happened, leaving a question of fact and making any issuance of summary judgment on this matter improper.

**D. Walmart Vicarious Liability**

Defendants argue that Masck has no evidence that Walmart knew about, contributed to, or could control the allegedly infringing conduct of the third party who Masck claims infringed his copyright. Masck does not claim that Walmart directly infringed on his copyright, but that they allowed third parties to sell identical or substantially similar copies. For a claim of contributory infringement, Masck must show that (1) Walmart knew about the allegedly infringing activity on its website, and (2) that Walmart materially contributed to the infringing conduct. *Ellison v. Robertson*, 357 F.3d 1072, 1077 (9th Cir. 2004). Defendants maintain that Pro Team, who is not a defendant, participated in Walmart's marketplace retailer program, which allows third parties to sell goods on Walmart's website. Walmart does not deliver the goods or take responsibility for fulfilling the orders. Defendants allege that Walmart did not know whether or not Pro Team licensed the image, thus Masck fails to establish the necessary elements to bring a claim of contributory infringement against Walmart.

For vicarious liability, the plaintiff must show that (1) defendant has the right and ability to supervise the infringing conduct, and (2) the defendant has an obvious and direct

financial interest in the infringement. *A & M Records, Inc. v. Napster, Inc.,* 239 F.3d 1004, 1022 (9th Cir. 2001) (citing *Gershwin Pub. Corp. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2nd Cir. 1971).This Court dismissed Masck's vicarious infringement claims against Amazon because it found Masck's allegation that Amazon had the ability to supervise the content of its website inadequate. *See* Dkt. No. 69 at 12. Instead, the Court held that to maintain such a claim, Masck must put forth factual allegations demonstrating Amazon could verify the copyright status of every piece of merchandise it lists from third party sellers. *Id*. Defendants allege that Walmart's marketplace retailer program operates in the same manner as Amazon, and Walmart should therefore be dismissed under a similar analysis.

Additionally, Defendants claim Walmart is protected by the Digital Millennium Copyright Act ("DMCA"), as an operator of an online marketplace for third party content, Walmart is a "service provider" eligible for § 512(c) protections. 17 U.S.C. § 512 (2010); *See Hentrickson v. Amazon.com, Inc.,* 298 F. Supp. 2d 914, 916 (C.D. Cal. 2003). The DMCA safe harbor, if applicable, would protect Walmart where, (1) it has no actual/red-flag knowledge of infringing material, (2) it did not receive a financial benefit directly from the infringing activity, where it has the right and ability to control that activity, and (3) it responded expeditiously to statutorily compliant notices of infringement by removing or disabling access to the allegedly infringing material. 17 U.S.C. § 512(c)(1). Defendants argue that Walmart had no knowledge of the allegedly infringing material, no ability or right to control it, and Masck never gave them any notice of any copyright violations.

Masck, however, points out a crucial difference between Amazon and Walmart. While the Walmart marketplace retailer program may operate in a manner similar to

Amazon, Walmart also operates physical stores and is in control of what is sold there. Consequently, Masck argues the DMCA provision is not applicable to Walmart's retail exchanges. Finally, Masck maintains that in his Rule 26 disclosures, he included notices that were sent by his attorneys in July 2010 to both Sam's Club and Walmart, and an additional notice sent in 2011, to which Masck received a reply from a Walmart representative on September 14, 2011. Dkt. No. 116-7. When considering the evidence in a light most favorable to the non-moving party, this Court will deny summary judgment as to Walmart's potential liability.

**E. Statutory Damages**

Damages appear to be the most serious, contested issue in this case. Defendants argue Masck cannot recover statutory damages unless he registered his copyright before the infringement began. Instead, all moving Defendants allege they began their infringing activity before Masck registered his copyright and therefore the Court should only permit Masck to move forward with a claim for injunctive relief that forecloses future use of the photograph. Additionally, Defendants argue that it is too late for Masck to recover statutory damages, as under the Copyright Act, a plaintiff can only recover "an award of statutory damages...with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). The infringement starts when the first infringing act occurs, which Defendants interpret as meaning that Masck cannot recover statutory damages from anyone who has infringed prior to August 31, 2011, when Masck registered his copyright. *Johnson v. Jones*, 149 F.3d

494, 504 (6th Cir. 1998).

Furthermore, Defendants claim that Masck has no evidence to support an award of damages or profits, but only makes vague statements as to the evidence of the damages he is due. While Masck has said that supporting evidence cannot be provided until the Defendants provide complete disclosure of all transactions involving the photo including dates, amounts, agreements, etc., Defendants argue that Masck never propounded timely discovery seeking said information from the Defendants. To recover, Defendants maintain that Masck has an obligation to disclose a computation of each category of damages claimed and the evidence on which each computation is formulated from. FED. R. CIV. P. 26(a)(1)(A)(iii). Defendants specifically allege that Masck has no right to (1) any criminal penalties from Amazon, as this is a civil case, (2) any share of profits on Nissan's vehicle sales, as to recover a plaintiff must show evidence of the infringer's "gross revenue attributable to the infringement," and there is no rational basis for determining such revenue in Nissan's case[4], and (3) profits from SI advertising space as a copyright owner can only recover "profits of the infringer that are attributable to the infringement," 17 U.S.C. § 504(b), meaning that to recover, Masck must show that SI received more money because Nissan ran an ad containing Masck's photo than it would have received from a non-infringing ad.

Masck calculates his potential damages by (1) direct profits arising out of

---

[4] Defendants argue Masck cannot receive a portion of Nissan's sales because Masck has no evidence that the particular ad with the Howard photo can be linked in any non-speculative way to any subsequent Nissan sales.

unauthorized use by an infringer of plaintiff's property, and (2) indirect profits made by Nissan for its sale of cars, which sales themselves inextricably knit with the illegal acts of the violaters/infringers. Because Getty provided the original unauthorized photo to all of the other Defendants, Masck maintains that Getty is responsible for whatever damages may be due as a right of copyright violations.[5]

Masck breaks his calculation of damages down into four categories. First, Masck argues that he is due "Infringers' Gross Profits" from Nissan and the car sales that resulted from the Howard photo ad. In support, Masck provides a list of the specific amounts Nissan paid to SI, Getty, Howard, and ESPN for their contributions to the ad. *See* Dkt. No. 102 at 17. With the exception of a t-shirt company, Masck notes that Nissan is the only known company to use the pose to sell a product other than the picture itself. Copyright damages law specifies that damages calculations should be based on the gross profits less cost of goods sold less sales which demonstrably would have happened anyway even absent the infringement. 17 U.S.C § 504(b). In the instant case, Masck recognizes Nissan as a rational economic actor. When the excess of $3 million in costs Nissan paid to run the infringing ads are added to the $1 million Nissan paid per year to sponsor the Heisman house tour, of which the infringing photo was at the heart of, Nisan shows its own value, over $5 million, that it spent on the iconic football photo. Additionally, Masck provides the Court with an average breakdown of Nissan car sales from the year the ads ran.[6]

---

[5] However, Masck notes Getty is not responsible for the results of Masck's claims directed at/against Howard, which are being separately mediated and are not part of this Motion.

[6] Masck's calculations are based on Nissan's publicly available minimum and maximum retail prices.

Second, Masck argues he is due profits from the sale of the photos. While Masck does not assume that the amount of money from the sale of the photograph itself is very substantial, he does allege that the value of the photo has been disseminated and is easily available for sale. Third, Masck establishes that statutory damages are an alternative to gross profits. 17 U.S.C. § 504(c)(1). Depending on the substance of the answers past due, Masck suggests that he is likely to elect statutory damages as to each violation by Amazon, Fathead, Walmart, and Champions. If a Defendants' violation is determined to be willful, likely only in the case of Amazon and Champions Press, the amount recovered is not to exceed $150,000. *Id*. If the violation is determined to not be willful, damages awarded may be between $750 and $30,000, depending on the Court's discretion and obligation to avoid a windfall. Finally, Masck argues that he is due reasonable attorney's fees as each and every Defendant violated his copyright after the filing date of August 31, 2011. At the very least, a question of material fact exists as to what constitutes the dates of infringement and whether or not the evidence Masck has provided is enough to support awarding damages in his favor. The Court will deny summary judgment as to statutory damages.

## IV. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [#107] is GRANTED IN PART and DENIED IN PART. Counts I, II, III, V, VI, VII, VIII, IX, and XX remain in this action, and Counts X-XVI, which allege Lanham Action violations, are dismissed.

SO ORDERED.

Dated: March 10, 2014

/s/ Gershwin A Drain
GERSHWIN A. DRAIN

UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 10, 2014, by electronic and/or ordinary mail.

/s/ Tanya Bankston
Deputy Clerk